UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leon Taylor-Bey,

              Plaintiff,       Case No. 23-11958

v.                             Judith E. Levy
                               United States District Judge

Jodi DeAngelo, *et al.*,

                               Mag. Judge Curtis Ivy, Jr.

              Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [47]

*Pro se* Plaintiff Leon Taylor-Bey filed the verified complaint in this matter on August 8, 2023. (ECF No. 1.) Plaintiff is incarcerated at the Woodland Center Correctional Facility in Whitmore Lake, Michigan, and alleges that his Eighth and Fourteenth Amendment rights were violated due to contaminated water.

Before the Court is Defendants Jodi DeAngelo and Heidi Washington's motion to dismiss. (ECF No. 47.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.    Background

Plaintiff, at all relevant times, was incarcerated at the Woodland Center Correctional Facility ("WCC"). (ECF No. 1, PageID.3.) He is a "dialysis patient" with kidney and heart conditions and also diabetes. (*Id.* at PageID.4, 6.)

Defendant DeAngelo was the warden of the WCC. (*Id.* at PageID.3.) Defendant Washington is the Director of the Michigan Department of Corrections ("MDOC"). (*Id.* at PageID.4.)

On January 9, 2021, Plaintiff was transferred to the WCC from the Ryan Correctional Facility in Detroit, Michigan. (*Id.* at PageID.5.) In 2021, Plaintiff "noticed the drinking water had a brownish or yellowish color to it, and bad smell and taste to it." (*Id.*) He claims that DeAngelo "deceived" him "into believing that WCC had drinkable water" and that she "knew the water at WCC was not like Ryan Corr. Fac., because she orders her staff to bring bottled water to work after my family researched the water at [WCC]." (*Id.*) Plaintiff states that the water at the WCC is "well-water, which is contaminated with impurities that made it unhealthy to drink, that caused Plaintiff significant pain." (*Id.*) He was forced to shower and cook food in the water, (*id.*), and "was forced to not

2

eat most of the time and loss of weight because of the taste of the water unable to drink or cook with it." (*Id.* at PageID.6.)

Plaintiff alleges that DeAngelo "knowingly deprive[d] Plaintiff of his right to bodily integrity[ ] by forcing Plaintiff to involuntarily consume contaminated water, thus violating his constitutional rights." (*Id.* at PageID.3–4.) Plaintiff also alleges that he sent Washington a letter on April 9, 2023, which informed her that the water at WCC was contaminated and dangerous to him, but she responded with deliberate indifference. (*Id.* at PageID.4.)

Plaintiff's verified complaint contains several exhibits.[1]

Plaintiff attaches an undated letter from Plaintiff to both Defendants. In the letter, Plaintiff represents that he is a dialysis patient with several health conditions, and that in January 2020, he and about 37 other dialysis patients were transferred here "under the guile that we

---

[1] The Court notes that Plaintiff's other filings also contain exhibits. For example, on March 10, 2026, Plaintiff filed two affidavits that were not attached to his complaint. (ECF No. 50, PageID.407.) Because this opinion concerns a motion to dismiss, the Court will not consider these other "exhibits" because "[g]enerally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint," *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)), and a plaintiff cannot amend their complaint without moving for leave to amend. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).

would be similarly situated, meaning proper medical treatment" and "that has been a falsehood. (*Id.* at PageID.15.) He states that DeAngelo instructs her staff to not drink the "contaminated well water" and that the water is brown and contaminated with "arsenic/lead/rust/e-coli, iron, salt water." (*Id.* at PageID.15–16.) He also states that "[w]e requested Warden DeAngelo to allow us to use the prisoners benefit fund (PBF) to purchase drinkable water" and "Warden DeAngelo denied the request and forced us to drink contaminated well water instead." (*Id.* at PageID.16.)[2]

Plaintiff also attaches documents related to MDOC Prisoner grievance forms submitted by Plaintiff on April 18, 2023, stating that DeAngelo and Washington did not respond to his letter concerning contaminated water at WCC. (*Id.* at PageID.17–26.) These documents include MDOC's responses and his appeals.[3] According to the grievances, Plaintiff "experienced nausea, diarrhea, and stomach cramps" due to the water. (*Id.* at PageID.21.)

---

[2] The letter appears to be filed again at ECF No. 1, PageID.37–38.

[3] Several of these documents are included multiple times.

The complaint includes the Affidavits of Carlton Mixon and Darren Stribling, who describe their experiences with the water being "discolored" or "brownish with a foul odor." (*Id.* at PageID.27–36.) They also state, "every staff member that I saw had their own personal store bought water with them when I asked why they all said that nobody drinks the water here at Woodland." (*Id.*) They detail their issues with the water and lack of resolution despite complaining to the doctor and DeAngelo.[4] There is also an affidavit from Jovan Claybron, who is also a dialysis patient and describes his issues with the water, its contamination, and the health issues he experienced. He also claims that "15 dialysis patients have died since the transfer [from Ryan Correctional Facility]." (*Id.* at PageID.39–41.)

Plaintiff attaches a document titled, "Warden's Forum Minutes" for the WCC dated June 28, 2023. (*Id.* at PageID.51.) For "Level II-Cedar/Infirmary," Note 1 states "For the past couple of weeks, the water in Cedar has been brown and has a funny taste. Can we be given bottled water until the problem is resolved?" The response was, "No bottled water

---

[4] These affidavits are included several times.

5

will be given out. Wolverine Water was out on 6/27 and resolved the issue with the water softener." (*Id.*)

Plaintiff also includes a number of articles and publications:

- An October 2000 "fact sheet" from the United States Geological Survey titled, "Arsenic in Ground Water in Livingston County, Michigan. (*Id.* at PageID.9–10.)

- A July 6, 2023 article from CNN Health titled, "Nearly half of the tap water in the US is contaminated with 'forever chemicals,' government study finds." (*Id.* at PageID.11–14.)

- An undated article from the Livingston Daily titled, "Water in several Livingston County schools show PFAS levels 'well below' EPA limit." (*Id.* at PageID.43.)

- An undated article from the Detroit Free Press titled, "Science panel: Michigan's PFAS limit may not adequately protect health." (*Id.* at PageID.44–46.)

- A document that appears to come from a website titled "EveryDay Health," discussing UTIs. (*Id.* at PageID.47.)

- An excerpt from an unknown article discussing PFAS testing in drinking water in Michigan. (*Id.* at PageID.48.)

- A spreadsheet of unknown origin that appears to be one page of 74. (*Id.* at PageID.49–50.) It lists "water system name[s]," which includes two entries for "Woodland Center Correctional Facility." Those two entries for WCC have "violation type[s]"

6

of "M&R," and "contaminant name" of "Chlorine" and "Total Coliform/E.Coli."[5]

Plaintiff seeks damages and declaratory and injunctive relief against Defendants in their individual and official capacities. (*Id.* at PageID.3–4, 7.) He brings Eighth and Fourteenth Amendment "bodily integrity" claims under 42 U.S.C. § 1983. (*Id.* at PageID.6–7.)

## II.   Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[5] It is not clear to the Court what this document represents or what it refers to because the spreadsheet lacks context, dates, or a source

A pro se complaint is entitled to a liberal construction and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III.   Analysis

#### A.   Eleventh Amendment Sovereign Immunity

Defendants first argue that Plaintiff's damages claim against them in their official capacities should be dismissed because they are entitled to Eleventh Amendment sovereign immunity. (ECF No. 47, PageID.373.)

The Eleventh Amendment bars lawsuits against a state unless the state has waived its immunity or unless Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "is no different from a suit against the State itself." *Id.* at 71.

Here, the Supreme Court has held that claims brought under 42 U.S.C. § 1983, as Plaintiff brings here, are barred against States due to

Eleventh Amendment immunity. *Id.* at 66. Plaintiff's claim for damages against Defendants in their official capacities is therefore dismissed.

### B.    Fourteenth Amendment Claim

Plaintiff brings Eighth and Fourteenth Amendment claims against Defendants. (ECF No. 1, PageID.6.) Defendants argue that Plaintiff's Fourteenth Amendment claim should be dismissed because his conditions-of-confinement claim is properly brought under the Eighth Amendment. (ECF No. 47, PageID.374.)

"[T]he Eighth Amendment prohibition against cruel and unusual punishments applies to the states through the Fourteenth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 735 n.12 (6th Cir. 2018) (citing *Robinson v. California*, 370 U.S. 660, 667 (1962)). "Thus, prisoners may sue state prison authorities for Eighth Amendment violations." *Id.* Because Plaintiff is a convicted prisoner, not a pretrial detainee, his claims arise under the Eighth Amendment. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315 (6th Cir. 2023).

Plaintiff's claim regarding the conditions of his confinement is properly brought as an Eighth Amendment claim. Thus, his Fourteenth Amendment claim is dismissed.

### C.    Eighth Amendment claim

The remaining claims against Defendants are Plaintiff's Eighth Amendment "right to bodily integrity" claim against Defendants for injunctive and declaratory relief and in their individual capacity for money damages. Defendants argue that these claims should be dismissed because "Plaintiff fails to sufficiently state a claim or allege the personal involvement of any Defendant in a constitutional violation." (ECF No. 47, PageID.375.)

### i.    Group Pleading and Supervisory Liability

First, Defendants argue that the complaint "is an example of impermissible group pleading" because "Plaintiff merely alleges that, as high-level government employees, Defendants are responsible for the allegedly contaminated water at WCC." (*Id.* at PageID.376–377.) According to Defendants, these allegations are insufficient to state a claim against Washington or DeAngelo because of their lack of specificity and because Plaintiff's claims rely solely on their supervisory position.

"[O]fficials are personally liable for damages under [§ 1983] 'only for their own unconstitutional behavior.'" *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241,

10

1246 (6th Cir. 1989)). A plaintiff's § 1983 claim against a supervisory official "must fail . . . unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (quoting *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009)). Plaintiff must allege that Washington and DeAngelo "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Cardinal*, 564 F.3d at 803); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (holding that the plaintiff failed to state a § 1983 claim against supervisory defendants because he "has not alleged that [the supervisory defendants] committed any actual acts, nor has he averred that they acquiesced in the conduct of their employees").

Regarding Washington, Plaintiff alleges that she is "responsible for [his] health and safety and standard of care," that he sent her a letter on April 9, 2023 regarding the alleged water contamination, and that she "acted with deliberate indifference" and "allow[ed] this deplorable of confinement [*sic*] which exposed Plaintiff to unnecessary risk to his health and future health." (ECF No. 1, PageID.4; *see also id.* at PageID.17 (grievance form filled out by Plaintiff stating, "I wrote a letter to both the

11

Director Heidi Washington and the Warden Jodi DiAngelo, they didn't answer the letter concerning the contaminated water issue at WCC").) He also represents that her actions "are the cause and/or proximate cause" of his being exposed to contaminated water. (*Id.* at PageID.7.)

The Court finds that these allegations are insufficient with regard to Washington. Regarding Plaintiff's allegation that Washington failed to respond to his letter informing her of the water quality, Washington's failure to act or respond to his letter is insufficient for liability. There is no indication that she was aware of the letter and the remainder of Plaintiff's allegations as to Washington do not describe her actions with any specificity beyond her role as a supervisory official. *See also Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). As such, Plaintiff's Eighth Amendment claim against Washington is dismissed.

Regarding DeAngelo, Plaintiff alleges that she is responsible for his conditions of confinement as it is "in her supervision" but also that she "forc[es] Plaintiff to involuntarily consume contaminated water." (ECF

No. 1, PageID.3–4.) He also represents that her actions "are the cause and/or proximate cause" of his being exposed to contaminated water. (*Id.* at PageID.7.) As set forth in the complaint and its exhibits, DeAngelo was aware of the poor water quality, ordered her staff not to drink the water or use it in the coffee machines, purchased bottled water for her staff, but refused to purchase bottled water for prisoners or "allow [them] to use the prisoners benefit fund [ ] to purchase drinkable water" even after they personally communicated with her. (*Id.* at PageID.5, 15–16; *see also id.* at PageID.27, 33 (affiants claiming that they spoke to or communicated with DeAngelo and asked her to provide bottled water and "she told [affiants] to write her with another ideal's on how to purchase the water, which [they] did but she never responded").) Plaintiff also alleges that DeAngelo was aware of his vulnerable health conditions and that contaminated water could be harmful to him. (*Id.* at PageID.15–16.)

These allegations regarding DeAngelo's actions do not constitute "impermissible group pleading" or rely solely on her supervisory position. (ECF No. 47, PageID.377.) While some of Plaintiff's allegations certainly fall under the category of impermissible supervisory liability—such as his statement that the conditions of his confinement are "in her

13

supervision"—he sets forth other specific facts about what DeAngelo was aware of and what she did or did not do. The Court declines to dismiss DeAngelo on this basis.

### ii.    Sufficiency of the allegations

Next, Defendants argue that Plaintiff's complaint must be dismissed for failure to state a claim "because his allegations are wholly conclusory, and his complaint is not plausible on its face." (ECF No. 47, PageID.377.)

The Eighth Amendment prohibits "cruel and unusual punishments," which imposes duties on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 551 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). A prison official may be held liable for their deliberate indifference to inadequate conditions of confinement. *Finley v. Huss*, 102 F.4th 789, 805 (6th Cir. 2024). "To determine whether an official was deliberately indifferent to such conditions of confinement, we employ a two-pronged analysis with both

14

an objective and a subjective component." *Id.* "First, the objective prong asks whether the inmate was incarcerated under conditions posing a substantial risk of serious harm. . . . The subjective prong then asks whether officials knew of and disregarded that excessive risk to the inmate's health or safety." *Id.* Defendants argue that Plaintiff cannot fulfill either prong. (ECF No. 47, PageID.378.)

Defendants' deliberate indifference argument relies on exhibits filed in another case, *Stribling v. Washington*, Case No. 20-12990 (E.D. Mich.), which also concerned allegations of contaminated water at WCC. In *Stribling*, the defendants, who were also Washington and DeAngelo, filed a motion for summary judgment on January 10, 2024. *Stribling v. Washington*, No. 20-12990, 2024 WL 3654793, at *1 (E.D. Mich. June 3, 2024). In support of their motion for summary judgment, the *Stribling* defendants attached several exhibits, "which included declarations, water reports, and photographs of the dialysis and housing unit at WCC." (ECF No. 47, PageID.367.) Defendants urge the Court that it should consider the *Stribling* summary judgment exhibits when evaluating this motion to dismiss because the exhibits are "part of the public record" and

15

disprove Plaintiff's allegations that the water in WCC was contaminated or otherwise unsafe to drink. (*Id.*)

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.* (citing *Weiner*, 108 F.3d at 89).

The Court declines to consider the *Stribling* summary judgment exhibits and finds that consideration of those exhibits would require converting Defendants' motion to dismiss to a motion for summary judgment. The *Stribling* summary judgment exhibits are not "public records" suitable for consideration at this stage of the case.

Put simply, a "public record" is not any document or assertion that is available to the public. A court's ability to consider "public records" outside the complaint is a form of judicial notice. *See New England*

16

*Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Federal Rule of Evidence 201(b) permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . is generally known . . . or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lim v. Hightower*, No. 24-3960, 2025 WL 2965692, at *4 (6th Cir. Oct. 21, 2025) (quoting Fed. R. Evid. 201(b)). For example, courts can take judicial notice of prior judicial acts, like entry of judgment or a plea of guilty. *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).[6]

Regarding other judicial records, such as filings by parties, those "can sometimes be properly noticed to show the acts of the parties or

---

[6] Other facts proper for judicial notice include federal copyright registrations, *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005), the existence of a statute or law, *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977), or basic verifiable facts such as that Arizona is one of the fifty United States. *Buser v. United States*, 85 Fed. Cl. 248, 263 (2009).

17

other actors in the litigation; e.g., that a complaint was filed, that return of service was made, or that stipulations were entered into." *Id.* (quoting 21B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 5106.4 (2d ed. 2005)). But this does not automatically result in judicial notice of the <u>facts</u> asserted in those filings. This distinction is important because "courts do not take judicial notice of documents, they take judicial notice of facts." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020). "The existence of a document," such as a filing by a party, "could be such a fact, but only if the other requirements of Rule 201 are met." *Id.* For example, a court can take judicial notice that a deposition was taken but may not take judicial notice of the deposition for the truth of the matters asserted. *See Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (declining to take judicial notice of "substantive facts" contained in depositions and affidavits from other cases, but acknowledging that it could take judicial notice of the existence of those documents); *Martinez v. Wayne County*, 142 F.4th 828, 846 (6th Cir. 2025) (declining to take judicial notice of the contents of articles from a variety of local news outlets "for the truth of the matters they assert"); *Kale v. Alfonso-Royals*, 139 F.4th 329, 336 (4th Cir. 2025) ("Just because

18

a document is on the public docket in another case . . . does not make it proper to introduce into the record before any federal court at any time . . . . [W]e decline to take notice of any of the underlying facts included within these documents." (citing *United States v. Awni Shauaib Zayyad*, 741 F.3d 452, 463–64 (4th Cir. 2014))).

Defendants argue that the *Stribling* summary judgment exhibits show that "the water that [Plaintiff] complains about is indeed safe and contains no harmful contaminants." (ECF No. 47, PageID.378.) Defendants' request that the Court take judicial notice of the *Stribling* summary judgment exhibits plainly falls outside of permissible judicial notice because they ask the Court to take judicial notice of these exhibits for the truth of the matter asserted by these exhibits, not that these exhibits exist and were filed.

The Court will not take judicial notice of these facts because whether or not the water in WCC is contaminated is not "generally known," nor can the Court conclude that the contents of the *Stribling* summary judgment exhibits "cannot reasonably be questioned." Fed. R. Evid. 201(b)(1). While Defendants may believe that the "[w]ater testing reports" submitted in *Stribling* unequivocally demonstrate that the

19

water is "safe" and "contains no harmful contaminants," (ECF No. 47, PageID.378), Plaintiff should have the opportunity to conduct discovery and develop his own factual record with regard to the quality of the water at WCC. The Court will not take judicial notice of a fact just because there is evidence in another case that supports the moving parties.

Defendants cite *Sherer v. Bank of New York Mellon*, No. 14-CV-12641, 2015 WL 4935614 (E.D. Mich. Aug. 18, 2015), for the contention that the Court can consider the *Stribling* summary judgment exhibits. *Sherer* concerned a mortgage foreclosure that the plaintiff believed violated Michigan law. Although the complaint claimed that certain Michigan laws were in effect when the foreclosure was initiated, the defendant argued that the Michigan law the plaintiff relied upon was actually repealed several months before the foreclosure began. *Id.* at *3–4. The public record that the *Sherer* court considered—and that refuted the plaintiff's allegations—was the date that the Michigan state law was repealed. The date that a law was repealed is a judicially noticeable "public record" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Abu-Joudeh*,

20

954 F.3d at 848 (quoting Fed. R. Evid. 201(b)). Thus, the "public record" in *Sherer* is not like the *Stribling* summary judgment exhibits here.[7]

The Court recognizes that this reasoning does not follow that of *Claybron v. DeAngelo*, a case that also addressed allegations of water contamination at WCC against the same Defendants. No. 23-10840, 2024 WL 4486298, at *5 (E.D. Mich. July 29, 2024), *report and recommendation adopted*, No. 2:23-CV-10840, 2024 WL 4024498 (E.D. Mich. Sept. 3, 2024). The *Claybron* court granted Defendants' motion to dismiss and relied on the same *Stribling* summary judgment exhibits that Defendants urge the Court to consider here. The Court respectfully declines to follow the reasoning in *Claybron* for the reasons set forth above.[8]

---

[7] Defendants also reference *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), but that case does not discuss consideration of items outside of the complaint in a meaningful way that would allow the Court to consider that analysis in this case.

[8] The Court also notes that the *Claybron* opinion relies on *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018), in its decision to "consider the records from *Stribling* that refute Claybron's claims when deciding defendants' motion to dismiss." *Claybron*, 2024 WL 4486298, at *5.

In *Watermark*, the court considered prior court proceedings because there was a possibility that those prior court proceedings concerned identical claims between the same parties and were thus precluded. *See Watermark*, 905 F.3d at 430.

21

Defendants next argue that the complaint does not sufficiently set forth allegations for both the "objective" and "subjective" prong.

With regard to the objective prong, which requires allegations that Plaintiff "was incarcerated under conditions posing a substantial risk of serious harm," *Finley*, 102 F.4th at 805, Defendants claim that Plaintiff "simply does not present facts to objectively support his claim . . . because that claim is based on the faulty premise that the water at WCC is contaminated." (ECF No. 47, PageID.378.) They rely on the *Stribling* summary judgment exhibits for this argument. As previously discussed, the Court declines to consider the *Stribling* summary judgment exhibits and thus declines to dismiss the complaint on that basis.

With regard to the subjective prong, which requires allegations that "officials knew of and disregarded that excessive risk to [Plaintiff's] health or safety," *Finley*, 102 F.4th at 805, Defendants state that Plaintiff

Consideration of those prior court filings—such as briefing, trial transcripts, and the jury verdict—was required to make an issue preclusion determination.

The relevance of the "public record" court filings in *Watermark* is entirely different than the *Stribling* summary judgment exhibits in this case. Unlike the court records in *Watermark*, Defendants do not ask the Court to consider the fact that the *Stribling* case was filed or that it was dismissed on summary judgment. Instead, Defendants ask the Court to accept as true facts asserted by the defendants in *Stribling*, which is entirely different.

22

"has presented no facts that [Defendants were] personally aware of water contamination at WCC" because "[w]ater testing reports . . . conclusively show that the water [Plaintiff] complains about is indeed safe and contains no harmful contaminants." (ECF No. 47, PageID.378 (citing the *Stribling* summary judgment exhibits).) Again, the Court declines to consider those exhibits at this stage of the case and declines to dismiss the complaint on that basis.

Finally, Defendants argue that Plaintiff's "own exhibits" demonstrate that "there are no issues with the safety of the water and there is no serious risk of harm to which Defendants could have been deliberately indifferent." (ECF No. 47, PageID.378–379.) In particular, Defendants reference the USGS report titled, "Arsenic in Ground Water in Livingston County, Michigan," which was attached to Plaintiff's exhibit. (ECF No. 1, PageID.9–10.) Defendants claim that the USGS report shows that "the level of arsenic in the drinking water in Livingston County, where WCC is located, is within EPA standards for arsenic levels." (ECF No. 47, PageID.378–379.) The Court disagrees with Defendants' conclusion that the USGS report undermines Plaintiff's allegations. The USGS report was issued in October 2000, over 20 years

23

before Plaintiff claims he experienced drinking water issues at WCC. (ECF No. 1, PageID.9–10.) The Court finds that the USGS report provides very little information that helps or hurts Plaintiff's claims and, overall, its relevance to Plaintiff's claims appears minimal.

Defendants also reference another attachment to Plaintiff's complaint which allegedly demonstrates that "other testing of Livingston County drinking water found that PFAS levels were 'well below' EPA limits." (ECF No. 47, PageID.379 (citing ECF No. 1, PageID.43).) The Court likewise finds that this exhibit—a Livingston Daily article titled, "Water in several Livingston County schools show PFAS levels 'well below' EPA limit"—does not undermine Plaintiff's allegations. As an initial matter, there is no indication when this article was published or when the testing described in the article was conducted. (ECF No. 1, PageID.43.)[9] Further, Plaintiff claims that the water in WCC is "brownish or yellowish," has a "bad smell and taste," (*Id.* at PageID.5)

---

[9] The article references "a 2016 U.S. Environmental Protection Agency advisory limit," (ECF No. 1, PageID.43), which indicates that the article and the testing described in the article likely took place sometime after 2016. However, an assertion that PFAS levels in several Livingston County schools were "well below" EPA limits sometime during or after 2016 does not demonstrate that the water in WCC was not contaminated during 2021 and beyond.

and is potentially contaminated in a variety of different ways not limited to PFAS. (*See id.* (mentioning "coliform/E. Coli and chlorine"); *id.* at PageID.15 (describing the water as "contaminated arsenic laced well water"); *id.* at PageID.16 (stating that the water is "contaminated arsenic, calcium, iron, rust and chioriform [*sic*] and e-coil [*sic*]" and "contaminated arsenic/lead/rust/e-coli, iron, salt water").) Thus, the Court finds that the Livingston Daily article has limited relevance to Plaintiff's claims and, overall, does not demonstrate that "there are no issues with the safety of the water." (ECF No. 47, PageID.379.)

In short, Defendants have not demonstrated that Plaintiff's allegations are "conclusory" or otherwise deficient and Plaintiff's Eighth Amendment claim against DeAngelo is not dismissed.[10]

## IV.   Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. (ECF No. 47.)

---

[10] Defendants also move for dismissal of Plaintiff's claim for injunctive relief, arguing that he "has not established that there has been a constitutional violation, let alone one that is ongoing" because "objective State testing has shown that the water is perfectly safe." (ECF No. 47, PageID.380.) Defendants again rely on the *Stribling* summary judgment exhibits in support of this argument. The Court will not consider those exhibits and declines to dismiss his claim for injunctive relief on that basis.

Plaintiff's claims against Defendant Washington and claims arising under the Fourteenth Amendment are dismissed in their entirety. Plaintiff's claim for money damages against Defendant DeAngelo in her official capacity is also dismissed. Plaintiff's 42 U.S.C. § 1983 Eighth Amendment claim against Defendant Deangelo for damages in her individual capacity and for injunctive and declaratory relief remain in the case.

IT IS SO ORDERED.

Dated: May 11, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

26